By the Court.—Freedman, J.
The court below held that the defendant wrongfully, and without authority of law, seized upon and removed plaintiff’s goods, and that consequently the plaintiff was entitled to recover for the wrongful taking and detention ; but that the amount of such recovery must be nominal, because the appropriation of the property to the use, benefit and advantage of the plaintiff under the Percy execution was an appropriation under valid legal process against him, and hence in judgment of law was equivalent to its return and acceptance by him.
The case having been disposed of solely upon this theory, and plaintiff’s exceptions having been ordered to be heard in the first instance at the general term, the only question presented for the consideration of this court is : What effect, if any, does the Percy execution, and the proceedings thereunder, have upon the defendant’s liability in this action %
The action, as brought, if for the unlawful taking and the detention of plaintiff’s property, and for that the liability of the defendant as a trespasser, and the rights of the plaintiff against him, were complete on June 30, 1874. Defendant’s liability then was coextensive with the value of the property taken. From that liability he could not discharge himself by any act of his own without the assent of the plaintiff. Even a return of the property without an acceptance *420 by the plaintiff, would not have had the effect of releasing him. So if he had procured the property to be afterwards seized and sold under process in his own favor, such proceeding would have afforded him no protection in any form. This is the-settled law of this State, however different the rule may be elsewhere (Wehle v. Butler, 61 N. Y. 245 ; affi’g S. C., 35 N. Y. Sup’r Ct. 1; Hanmer v. Wilsey, 17 Wend. 91; Otis v. Jones, 21 Id. 394; Lyon v. Yates, 52 Barb. 237; Peak v. Lemon, 1 Lans. 295 ; Livermore v. Northrup, 44 N. Y. 107 ; Tiffany v. Lord, 65 Id. 310).
As an exception, however, it is equally well settled, that whenever it appears that the property was taken again from the trespasser without any agency or connivance on his part, and applied to the owner’s use, although without the latter’s consent, by the act of a third person and the operation of law, -the jury may take the taking of the goods by such third party, and the application that was made to plaintiff’s use, into the account in estimati,ng plaintiff’s damages. In such a case the application to plaintiff’s use is held to be equivalent to a return of the property and its acceptance by the owner. But in every such instance it must appear that the subsequent taking by such third party was -independent of any agency on the part of the defendant, and that there was in point of fact an application to plaintiff’s use (Higgins v. Whitney, 24 Wend. 379 ; Sherry v. Schuyler, 2 Hill, 204; Ball v. Liney, 44 Barb. 505 ; Ward v. Benson, 31 How. 411).
When these facts do appear, the wrong-doer can set up this subsequent seizure and application not as an entire defense, but in mitigation of damages, for the reason that it would be unjust for the owner to recover the valúe óf the property after he has thus had the benefit of it. It is not the fact of the seizure that gives the defense, but that it has been seized under such cir *421 cumstances that the owner has had, or could have, the benefit of it (Ball v. Liney, 48 N. Y. 6).
And whenever the defendant, under his answer, is entitled to rely upon any such matter in mitigation, it seems that it makes no difference whether the mitigating circumstances occurred before or after the commencement of plaintiff’s action (Dailey v. Crowley, 5 Lans. 301).
The law being as stated, and there having been no return of the property and an acceptance by the plaintiff, it only remains to be seen whether the defendant has brought himself within the exception as stated above.
According to his own showing he took the property from plaintiff’s possession in One Hundred and Twenty-first street, near Third avenue, on June 30,1874, under an execution for $1,031.03 against one John Halloran, from whom plaintiff had acquired title; he removed the property to a storeroom at No. 62 Duane street; and at said place, on July 22, 1874, he sold all the right, title, and interest of Halloran in and to the said property to one G-eorge H. McLoughlin for the sum of $225, which sum, as he says, was no more than enough to pay the expenses of such sale and his own fees. This being so, the other two executions against Halloran require no notice or consideration whatever. The sale made as described conferred upon McLoughlin as purchaser not only all the right, title, and interest which Halloran had in the property, if any, but also all the rights as to remedies of the creditor named in the execution under which the sale took place (Sands v. Hildreth, 14 Johns. 493 ; Porter v. Parmley, 52 N. Y. 185).
Having thus entangled plaintiff’s property by his own wrongful act, it is difficult to perceive how, without a surrender of the property and a waiver of his rights by McLoughlin, a fair application in fact to plaintiff’s use could subsequently be made of it. True, *422 the defendant claims, that when on the 1st of August following he received the execution against the plaintiff and in favor of Percy, he again levied upon the property, and that he subsequently sold all the right, title, and interest of the plaintiff therein. But this sale, as against plaintiff’s rights then accrued, was not a fair sale, because the value of the property had been, and •then was, seriously affected by the claim of McLoughlin to it under and by virtue of the preceding sale. This is plainly apparent from the fact that this property, consisting of one steam engine, four printing-presses, with the necessary shafting and belting, and a lot of type and a great many other articles making up a printing establishment, and which it had taken the defendant several days to remove from plaintiff’s premises, was knocked down for the paltry sum of $5, "and that even that bid could be obtained from no other person than George H. McLoughlin, to whom the property had already been once sold.
Even upon the assumption, therefore, that the levy under the Percy execution was a taking of the property by a third person within the meaning of the exception above stated, and that the proceeds arising from the sale under said execution constituted, by operation of law, an application of the property to plaintiff’s use, the defendant did not prove mitigation beyond the sum of $5, The wuong-doer, and not the wronged party, should suffer the direct consequences of the wrong, Ward v. Benson (31 How. 411), is authority upon this point. In that case the general term of the supreme court -held that the rule of damages in such a case is the actual value of the property at the time of the taking, less the amount which it produced at the sale.
Atwood v. Lynch (37 N. Y. Sup’r Ct. 5), does not help the defendant. In that case the sheriff, while making an. illegal levy under one execution, had in *423 his hands another and valid one against the same property, which bound the property, and one of the questions litigated was whether the sheriff could sell without an actual levy under the valid execution. The complaint alleged nothing beyond a naked trespass on June 24, 1864, which was the day of the sale. As the evidence was clear that at that time the sheriff not only held the goods in question, but also an execution against the plaintiff, which bound the goods, and as there was no evidence showing the final application of the proceeds of the sale, it was held that the plaintiff could not maintain trespass pure and simple as of the day of sale, and that is the extent of the decision.
Nor can the defendant derive any benefit from that class of cases which hold that where an officer of the law, as, for instance, a collector of duties or of taxes, holding valid process, seizes the property against which it is directed, in an illegal manner, or, though the seizure be regular, makes an illegal sale, the measure of damages is the value of the goods less the amount of the duty, or the tax which he was entitled to collect. They are not in point here.
There are other questions in the cáse which, in order to facilitate the re-trial of the issues, might properly be discussed now, if the whole of the evidence adduced at the trial were before us. But as the case, as settled and printed, contains only so much of the evidence as bears upon the points already considered, we shall not allude to them.
Plaintiff’s exceptions should be sustained, the verdict set aside, and a new trial ordered with costs to plaintiff to abide the event.
Sedgwick, J., concurred. ,