Argued 18 November; decided 16 December, 1901.

**HAMMER *v.* DOWNING.**

[66 Pac. 916.]

SUPPLEMENTARY PROCEEDING—ORDER—PRESUMPTION.

An order in supplementary proceedings requiring a defendant to apply certain money to the satisfaction of the judgment is not supported by a referee's finding that on a date more than three months prior to the reference he had such money in his possession, and that, no evidence to the contrary having been offered, he was therefore still in possession thereof; the presumption invoked to support the order being insufficient for that purpose.

From Multnomah: ALFRED F. SEARS, JR., Judge.

Action by Thomas J. Hammer against F. O. Downing and another, partners under the firm name of Downing, Hopkins & Co. · Judgment for plaintiff. From an order, issued in supplementary proceedings, requiring the defendant Downing to apply certain money to the satisfaction of the judgment, defendants appeal.                                    REVERSED.

For appellants there was a brief over the name of *Woodward & Palmer,* with an oral argument by *Mr. John H. Woodward.*

For respondent there was a brief over the names of *Watson & Beekman, Coovert & Stapleton, Edw. Mendenhall, T. H. Ward,* and *Wilson T. Hume,* with an oral argument by *Mr. Edward B. Watson.*

MR. JUSTICE MOORE delivered the opinion.

This is a proceeding supplemental to an execution, to compel the satisfaction of a judgment. The plaintiff filed an affidavit, from which it appears that he secured a judgment against the defendants F. O. Downing and F. H. Hopkins, partners as Downing, Hopkins & Co., in the circuit court for Multnomah County, October 29, 1897, for the sum of $7,817.50 and his costs and disbursements; that an execution was issued thereon November 24, 1897, and delivered to the sheriff of said county, who in pursuance thereof demanded from the defendant Hopkins payment of the sum stated therein, or information as to the defendants' property liable to be seized under the writ, which demand was refused; that the sheriff, after due and diligent search and inquiry, was unable to find any property belonging to either of them out of which he could make more than a small part of the sum so demanded. He further deposed, upon information and belief, that each of said defendants had money, stocks, notes, mortgages, and real estate liable to such execution, which he refused to apply toward its satisfaction, and greater in amount than was required for that purpose; stating the sources of his information, specifying the alleged property, estimating its value, and praying for an

order requiring each of the defendants to appear before the
court or a referee, at a time and place to be appointed for that
purpose, to answer under oath concerning his property not
exempt from execution. Based upon said affidavit, the judge,
at chambers, on December 4, 1897, made an order appointing
J. R. Stoddard referee to take and report the testimony to the
court, with his findings thereon, requiring each of the defend-
ants to appear before the referee on December 20, 1897, at 10
o'clock A. M., and to attend before him until their examination
was concluded, and directing that they should be personally
served with said order and a copy of the affidavit. The sheriff
served the same upon Downing, but certified that, after due
and diligent search and inquiry, he was unable to find Hopkins
within said county. Downing filed an affidavit December 18,
1897, controverting the statements contained in plaintiff's vol-
untary declaration under oath, and applied to the court for an
order vacating the proceedings; but, the motion having been
overruled, the time for his examination was changed to Decem-
ber 23, 1897, at the hour of 10 o'clock A. M., and the amended
order personally served upon him. At the time so appointed
he failed and neglected to appear before the referee, where-
upon the latter took the testimony of the witnesses, from which
he found, in effect, that on April 24, 1897, and thereafter to
September 1st of that year, Downing was the owner of and had
money in his possession in said county, liable to execution, in
a sum not less than $10,000; that between said dates he was
also the owner and in the possession of other personal property
in said county, liable to execution, of the value of not less than
$10,000; that, no evidence having been offered tending to
prove that he had paid out any of said money or parted with
the possession of any of said personal property, he was there-
fore still the owner and in the possession thereof; and that
within ten days from the entry of an order to that effect he
should be required to pay said sum of $10,000 in money, or so
much thereof as was necessary to satisfy plaintiff's judgment.
The defendant's exception to the report of the referee having
been overruled, the court on April 4, 1898, ordered Downing,

on or before the 16th of that month, to apply said sum of $10,000, lawful money of the United States, in his possession, or so much thereof as was necessary, to the satisfaction of said judgment; and they appeal.

It is contended by defendant's counsel that the findings of fact are insufficient to support the final order. The examination before the referee was held December 23, 1897, and he found, from the testimony taken and incorporated in the bill of exceptions, that the defendant Downing, from April 24, 1897, to September 1st of that year, had in his possession, in Multnomah County, money liable to execution in a sum not less than $10,000, and, no testimony having been offered tending to show that any of this sum had been paid out, he still had the same in his possession. The finding that Downing was still possessed of said sum of money is a conclusion of law, resulting from the application of the disputable presumption that a thing once proved to exist continues as long as is usual with things of that nature: Hill's Ann. Laws, § 776, subd. 33. The question thus presented is whether a sum of money usually continues in the possession of the same person for more than three months. Money, in addition to its intrinsic worth, is only valuable as a medium of exchange, just in proportion as it freely circulates. Misers hoard money; but this propensity is not the general characteristic of people engaged in active business, who expect to secure an increase of their capital by its use. The habit of secretly storing money does not prevail among persons who expect to secure interest by loaning it to others. In times of financial depression money is usually withdrawn from circulation; but such retirement results from the owner's fear of its loss. As soon as such apprehension is allayed, however, the money is restored to its field of former usefulness. No testimony was offered tending to show that from September 1, 1897, to December 23d of that year, the time appointed for the examination of the judgment debtor, a condition of monetary stagnation prevailed in Portland, Oregon, nor does it appear that Downing was a miser. In *Williams* v. *Harrison*, 19 Ala. 277, it was held that when money is shown to

have come to the hands of a guardian at a particular time, and there is no evidence whatever that any disposition has been made of it, it is the province of the jury to decide whether such possession continued until a particular time afterwards. Mr. Chief Justice DARGAN, in speaking of the certainty of the conclusion thus reached, observes: "I will not say that it would be improper to draw such an inference in the absence of all other proof; but to my mind it would be a very weak and inconclusive presumption." In that case the presumption of the continuance of things once proved to exist was invoked against a person whose duty it was to account for the money, which was proven to have once been in her possession. In the case at bar, however, Downing, before being cited to appear for examination, owed no duty to the plaintiff that required him to account for the money which he possessed prior thereto; so that the presumption relied upon is not applicable to the facts involved.

A better reason for concluding that the presumption relied upon to sustain the final order is insufficient for that purpose is based on the fact that, as the judgment debtor's failure to apply property found in his possession or under his control to the satisfaction of a judgment in proceedings supplemental to execution renders him liable to be punished as for a contempt of court (Hill's Ann. Laws, § 310), the proof of such possession ought to be conclusively established by the weight of the testimony given at such examination, and not deduced from disputable presumptions. The court having erred in making the final order, it must be set aside.          REVERSED.